**UNITED STATES of America, Appellee,**

**v.**

**Alfred GRASSIA, Appellant.**

**No. 105, Docket 29791.**

United States Court of Appeals Second Circuit.

Argued Oct. 28, 1965.

Decided Nov. 26, 1965.

---

Jacob D. Zeldes, Bridgeport, Conn. (David Goldstein, Bridgeport, Conn., on brief), for appellant.

Jon O. Newman, U. S. Atty. for the District of Connecticut, for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

This is another appeal stemming from the raids relating to enforcement of the federal wagering tax in Bridgeport, Connecticut, on October 8, 1964. See United States v. Costello, 352 F.2d 848 (2 Cir. 1965), United States v. Piccioli, 352 F.2d 856 (2 Cir. 1965), and United States v. Markis, 352 F.2d 860 (2 Cir. 1965). Alfred Grassia, represented by counsel and duly questioned by Judge Clarie at a term of the District Court for Connecticut at Hartford, to which at his request his case had been transferred for trial on his not guilty plea, pleaded *nolo contendere* to one count of a two-count indictment charging, under 26 U.S.C. § 7203, willful failure to pay the special occupational tax relating to wagers imposed by 26 U.S.C. § 4411. The other count was then dismissed at the Government's request. His points on appeal from the resulting conviction fall into two categories. The first repeats the same constitutional attacks on the federal wagering tax statutes that were advanced in the earlier cases. His other point is that the conscious generation of publicity by the Government and statements by Chief Judge Timbers in the course of other proceedings in January and February, 1965, prior to Grassia's change of plea,[1] see United States v. Costello, supra, 352 F.2d at 848; United States v. Piccioli, supra, 352 F.2d 856, so prejudiced

---

1. The judge's statements were the basis of one of several motions by Grassia to dismiss the indictment or grant a continuance.

his opportunity for a fair trial that the indictment should have been dismissed.

■ The first group of contentions, challenging the constitutionality of the federal wagering tax statutes, survive the plea *of nolo contendere,* as the Government concedes. But, so far as this Court is concerned, they have been determined adversely to Grassia by United States v. Costello, supra, 352 F.2d 848. Recognizing that the rationale of Albertson v. Subversive Activities Control Board, 86 S.Ct. 194 (1965), announced subsequent to our Costello opinion, may lead the Supreme Court to overrule its previous decisions in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), insofar as they sustained the federal wagering statutes against attack on the ground of self-incrimination, we consider that issue more appropriate for that Court's determination.

■■ As to Grassia's other contention that his right to a fair trial was compromised by adverse publicity, the United States concedes that, at the time of the change of plea and the dismissal of the second count, counsel made clear to the prosecutor and the court that Grassia intended to press the point on appeal, contrast United States v. Doyle, 348 F.2d 715, 720 (2 Cir. 1965); but it urges that a claim of the impossibility of obtaining an impartial trial is necessarily foreclosed when the defendant freely and with the assistance of counsel decides not to have one. Grassia responds that a defendant cannot be required to undergo a trial which the prosecution or the court has forced to occur at a place or a time that is inconsistent with the guarantees of the Sixth Amendment. His point is that the Amendment guarantees not only trial by an impartial jury but a "speedy" trial in the district where "the crime shall have been committed." He says that when this has been made impossible by the Government, as distinguished from third parties, the conventional remedies of extended continuance or change of venue are inappropriate since these involve a sacrifice of Sixth Amendment rights, and the only suitable remedy is dismissal of the indictment, thus rendering inconsequential any plea of *nolo contendere* and waiver of trial.

We do not find it necessary to consider whether a case might conceivably arise where the Government's conduct in generating publicity had been so egregious and the prejudice engendered by it so pervasive, cf. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), that the drastic sanction of dismissing the indictment would be demanded, in the interest of the particular defendant or for general therapeutic purposes, or for both. It suffices for decision here that the hurdle confronting any such claim must be exceedingly high and that Grassia does not come close to meeting it. Although we disapprove of what seems to have been needless intensification by the Government of the news of the arrests and, still more, of the unnecessary statements by the Chief Assistant United States Attorney on the two following days, see United States v. Costello, supra, 352 F.2d at 848, it proved possible to obtain impartial juries even at Bridgeport where the publicity was at its peak, see United States v. Piccioli, supra, 352 F.2d at 856; United States v. Markis, supra, 352 F.2d at 860. Criminal defendants are understandably prone to exaggerate the interest their fellow citizens take in matters of such acute concern to them. The transfer of Grassia's trial to Hartford, also within the "district," on December 4 at his request, although doubtless prudent, thus did not result from any demonstrated impossibility of obtaining a speedy trial by an impartial jury in Bridgeport.[2] And although the fact that defendants arrested in the October raid were still awaiting trial rendered Chief Judge Timbers' statement of February 8, 1965, even more ill-advised than we indicated in United States v. Piccioli,

---

2. As indicated in United States v. Costello, supra, 352 F.2d at 848, jury panels at the

terms held in Bridgeport are not limited to residents of that city.

supra, 352 F.2d at 856, we are wholly unconvinced that this pronouncement, combined with the preceding publicity generated by the prosecutor and the judge, made it so plainly impossible to obtain an impartial jury in Hartford as to relieve Grassia of any need to develop the facts by adhering to his plea of not guilty and examining the venire at Hartford on a voir dire.

Affirmed.